## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ANDREW C. CHASE and**
**CHERYL M. CHASE,**                                    Chapter 13
    Debtors                                      Case No. 12-10772-JNF


~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**ANDREW C. CHASE and**
**CHERYL M. CHASE,**
    Plaintiffs-in-Counterclaim
v.                                                      Adv. P. No. 17-1008
**CITIMORTGAGE, INC. and**
**WASHINGTON TRUST COMPANY,**
    Defendants-in-Counterclaim


~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion for Summary Judgment filed by the

Defendants, CitiMortgage, Inc. ("CMI" or "Citi") and Washington Trust Company

("Washington Trust") (collectively, the "Creditors") with respect to the two-count

Complaint filed by Andrew C. Chase and Cheryl M. Chase (the "Plaintiffs" or the

"Debtors").  Pursuant to their Complaint, the Debtors seek damages for the Creditors'

alleged violation of a confirmation order as a result of their refusal to accept mortgage

payments, as well as damages for their alleged unfair and deceptive trade practices and

resulting "substantial and otherwise unnecessary emotional distress." *See* Mass. Gen. Laws ch. 93A, §§ 2, 9.[1]

The Debtors filed an Opposition to the Motion for Summary Judgment. The Court heard the matter on September 25, 2017 and directed the Creditors to file a supplemental brief and an affidavit.

The Court concludes that the matter is ripe for summary judgment and finds and rules as follows.

## II. UNDISPUTED FACTS[2]

The Debtors filed a Chapter 13 petition on January 31, 2012. On Schedule A-Real Property, they listed an ownership interest in property located at 67 Brookside Avenue, Belmont, Massachusetts (the "property"). The Debtors obtained a loan from ABN AMRO Mortgage Group, Inc. on June 28, 2004 in the amount of $493,000 secured by a mortgage

---

[1] Specifically, the Debtors seek the following: 1) an Order denying CMI's Motion for Relief from the Automatic Stay on the basis of their violation of the Court's confirmation order dated January 27, 2017; 2) a declaratory judgment barring the Creditors and any future assignees from asserting any claim for post-petition arrears subsequent to the date of their First Loan Modification Application, dated December 24, 2014, "now or as part of any future required filing under Fed. R. Bankr. P. 3002.1(g) in response to the Trustee's Notice of Final Cure Payment;" 3) compensatory damages based upon the damages they suffered or, at minimum, $25 per violation as required under Mass. Gen. Laws Ch. 93A, § 9(3); 4) double or treble the actual compensatory damages based upon the damages they suffered or, at minimum, $25 per violation, based upon the Creditors' knowing or willful violations as required under Mass. Gen. Laws Ch. 93A, § 9(3); and 5) legal fees and expenses for the prosecution of the adversary proceeding pursuant to Mass. Gen. Laws ch. 93A, § 9(4).

[2] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

on the property.  Although CMI was not the originator of the Loan, it became the servicer of the loan prior to the filing of the petition; Washington Trust, according to the Creditors "was and remains the investor holding the note on the Loan."

On January 31, 2012, the Debtors filed a plan in which they proposed to treat the Creditors' secured claim by curing the prepetition default in the amount of $47,198over the term of the plan through payments to the Chapter 13 Trustee and making regularly monthly mortgage payments directly to CMI.

On January 27, 2014, this Court entered an order confirming the Debtors' 60-month Chapter 13 plan pursuant to which they agreed to pay the Chapter 13 Trustee the monthly sum of $1,915.00.  The Summary of Disbursements submitted by the Chapter 13 Trustee provided that CMI would be paid $786.63 per month to satisfy its prepetition arrears which were listed in the amount of $47,198.00, despite the significantly higher amount set forth in the proof of claim filed by CMI on June 12, 2012.[3]

On October 21, 2014, approximately eight months after confirmation of the plan, the Debtors filed a First Amended Chapter 13 Plan together with a "Motion of Debtors to Approve First Amended Chapter 13 Plan."  Pursuant to their First Amended Plan, the Debtors proposed to pay the sum of $1,866.00 to the Chapter 13 Trustee and to cure the Creditors' prepetition arrears in the amount of $62,855.00, a sum corresponding in round

---

[3] On June 12, 2012, CMI filed a proof of claim in which it listed the total installment payment due as of the petition date in the amount of $49,288.58, plus total prepetition fees, expenses, and charges in the amount of $13,566.32 for a total amount necessary to cure the default as of the petition date of $62,854.90.  It addition, it set forth a postpetition payment amount of $2,863.74.

numbers to the proof of claim filed by CMI.  On November 21, 2104, this Court granted the Debtors' Motion to Approve their First Amended Plan.  The order confirming that plan did not enter, however, until June 29, 2015 at which time the Court entered an "Amended Order Confirming Plan."  The Summary of Disbursements submitted by the Chapter 13 Trustee with respect to the Debtors' amended plan provided: "As of <u>October 31, 2014</u>, the Debtor shall pay the amount of <u>$49,790.00</u> to the Trustee. Commencing <u>November 01, 2014</u> and on the <u>1</u>st day of the month thereafter, the Debtor(s) shall pay to the Chapter 13 Trustee, the sum of <u>$1,866.00</u> for the remaining 28 months of the Plan."

Both before and after confirmation of their original Chapter 13 plan and their amended plan, the Debtors were unable to consistently make plan payments.  The Chapter 13 Trustee filed six motions to dismiss the Debtors' Chapter 13 case for failure to make plan payments between September 24, 2012 and February 21, 2017.  The Debtors' Chapter 13 case was dismissed on at least two occasions, prompting the Debtors to file motions to vacate and/or motions to reopen, evidencing the Debtors' struggle to comply with the terms of their plan.  Indeed, in recognition of their financial difficulties, the Debtors attempted to obtain a voluntary modification of the mortgage loan.  Their first loan modification application was submitted to CMI on or around December 24, 2014 and was rejected; their second application, which was submitted on June 5 2015, also was rejected as containing outdated information from December of 2104.

On July 30, 2015, approximately one month after the entry of the Amended Confirmation Order on June 29, 2015, the Chapter 13 Trustee filed a Motion for Order Dismissing Case in which she stated:

4

> The Court entered an Order confirming the Debtor's Plan, effective 03/01/2012. The Debtor is in arrears according to the terms of the proposed plan totaling $ 11,268.00, which is equal to 6.03 months of plan payments. This amount does not include the current month and may increase prior to hearing. Failure to make timely payments to the Trustee is a material default with respect to the confirmed plan and is "cause" for dismissal within the meaning of 11 U.S.C. § 1307(c)(4).

The Debtors promptly filed an Objection to the Trustee's motion, stating:

> The Debtors admit so much of the allegations contained in Paragraph 2 of the Motion regarding the fact that they are presently in arrears of their payments under their current Chapter 13 Plan. By way of explanation the Debtor, Andrew Chase, has recently changed employment and anticipates that he will be able to cure the alleged arrears within thirty (30) days of the date of this Objection. The Debtor denies that he has failed to "commence making payments" under his plan as implied by the Chapter 13 Trustee's citation to 11 U.S.C. § 1307(c)(4) in Parapgraph [sic] 2 of the Motion. Moreover, the Debtor asserts that, based upon the Debtor's renewed employment, the amount of the alleged arrears does not constitute a "material default" with respect to the Debtors' Chapter 13 Plan.

The Debtors and the Chapter 13 Trustee resolved the Trustee's motion through the submission of an Agreed Order which provided, in pertinent part, the following in bold, capital letters:

> **ORDERED THAT IF THE DEBTOR FAILS: (A) TO PAY TO THE TRUSTEE BY CERTIFIED FUNDS, BANK CHECK, MONEY ORDER OR ELECTRONIC PAYMENT THROUGH TFS (AN AUTHORIZED THIRD PARTY PAYEE) THE SUM OF $16,866.00 BY 12:00 NOON\* ON WEDNESDAY, SEPTEMBER 30th, 2015; AND, IN ADDITION, (B) TO REMAIN CURRENT DURING THE PENDENCY OF THIS AGREED ORDER ON THE MONTHLY PAYMENT OF $1,866.00 TO THE TRUSTEE, THIS CHAPTER 13 CASE MAY BE DISMISSED BY THE CLERK OF THE COURT UPON AFFIDAVIT OF THE TRUSTEE, WITHOUT HEARING . . .**

The Court entered the Agreed Order on September 2, 2015.

On October 9, 2015, the Trustee filed an Affidavit of Non-Compliance with respect to the Agreed Order, in which her counsel represented: "the Debtors failed to cure the

arrears, and are currently in arrears in the amount of $11,268.00 which equals 6.04 months of plan payments NOT including the current month." The Debtors did not file a timely response to the Affidavit. On October 20, 2015, the Court dismissed the Debtors' Chapter 13 case.

The dismissal of their Chapter 13 case prompted the Debtors to file a "Motion to Vacate Dismissal and Reinstate Chapter 13 Proceeding." The Debtor asserted that "[t]he lapse was caused due to the payment limit imposed by the TFS payment System and the Debtor's difficulties in overcoming this limitation. However, at this point, the Debtors have cured all payment arrears with the Chapter 13 Trustee and are now completely current with respect to their Chapter 13 Plan." On November 2, 2015, in the absence of objection, the Court granted the Debtors' Motion.

In the meantime, on April 23, 2015, CMI had filed a Motion for Relief from the Automatic Stay in which it alleged that, as of March 31, 2015, the Debtors owed the sum of $523,521.91, plus additional amounts for late fees, costs of collection and attorneys' fees. It also represented that postpetition payments were due for the period from May 1, 2012 through March 1, 2105 totaling $113,662.82, less funds held in suspense in the amount of $389.40. After obtaining several extensions of time to respond, the Debtors filed an opposition to the lift stay motion on May 18, 2015 in which they referenced the submission of the loan modification application to CMI.

Neither party was eager to litigate the lift stay motion. Although the Court scheduled a hearing, the Court continued hearings on the lift stay motion multiple times

6

at the parties' requests.  On October 8, 2015, however, the Court granted the motion as

counsel to the Debtor failed to appear at the scheduled hearing.

The Debtors moved for reconsideration of that order and the Court scheduled a

hearing for November 19, 2015, but subsequently continued the hearing a number of

times, again at the parties' request.   On January 25, 2016, in light of the numerous

continuances, the Court continued the lift stay motion generally, indicating that it would

reschedule the hearing at CMI's request.

On July 18, 2016, CMI moved to reschedule the hearing.  The Court granted the

motion and scheduled a hearing for August 18, 2016.  In response, the Debtors filed a

Supplemental Opposition to the lift stay motion in which they indicated that they were

seeking a loan modification to "re-capitalize" the arrears.  They added:

> Although the Debtors recognize that the failure to make post-petition
> mortgage payments may constitute "cause" for the granting of relief from
> the automatic stay, in the context of the Debtors' ongoing pursuit of a loan
> modification, they had been advised directly by the Creditor that they
> should not make any periodic monthly mortgage payments nor would any
> such payments in an amount less than the full accrued post- petition arrears
> be accepted by the Creditor. Moreover, even were it within their power to
> pay the post-petition arrears now accrued, it would logically nullify any
> reasonable basis for the Creditor to thereafter grant the requested loan
> modification.

In addition to filing the Supplemental Opposition, Andrew Chase filed an Affidavit in

Support of the Supplemental Opposition in which he represented that he and his spouse

"had been led to believe by CitiMortgage Inc. that it would not accept any payments for

less than the *entire* outstanding arrears owed."  In addition, he attested to the following:

> By October of 2015, I was becoming concerned about not making any
> mortgage payments because of the passage of time, I therefore wrote a

7

check for our regular mortgage payment of $2,950.00 on October 18, 2015 to CitiMortgage, Inc.   In November of 2015, I received back my check, uncashed, from CitiMortgage, Inc. with a cover letter stating, as I had been led to believe before, that CitiMortgage, Inc. "was unable to accept these funds because the amount is insufficient to cure your delinquency."

CMI received the check on November 2, 2015.   As reflected in CMI's business records, which are not in dispute, CMI reviewed the check and entered the following note on the Plaintiffs' account at 12:08 pm:

no mention of active repayment plan in place….funds rcvd iao [sic] $2950 not enough to bring account current…payment being sent back to customer

CMI returned the check to the Plaintiffs.  Mr. Chase attached to his affidavit a letter from CMI, dated November 2, 2015, in which CMI stated:  "This letter is in regards to the enclosed check #2784 in the amount of $2950.00 [sic] received on 10-30-15 concerning the above referenced property.  We are unable to accept these funds because the amount [is] insufficient to cure your delinquency. . . ."[4]  As noted above, on November 2, 2015, in the absence of objection, the Court granted the Debtors' motion to vacate.  The order vacating the dismissal was entered at 3:19 pm.

---

[4] Mr. Chase also attached to his affidavit a letter from CMI, dated May 6, 2015, to his counsel, although the letter appeared to confuse counsel's status with that of the Debtors. In any event, CMI stated: 1) that the Debtors were conditionally approved for a short sale subject to further information obtained from an appraisal or title search;" 2) the Debtors were not approved for a modification under the "Governments Home Affordable Modification Program" [sic] because "We service your loan on behalf of WASHINGTON TRUST COMPANY whom [sic] has not given us the contractual authority to modify your loan under this program;" and 3) the Debtors were not approved for a loan modification under the "Risk Supplemental Modification Program" because "[i]n performing our underwriting of a potential modification your combined Housing Expense to Income (HTI) Ration is outside of the acceptable range established for this program."  CMI sent additional letters to Debtors' counsel on June 22, 2016, and August 6, 2016, indicating that the Debtors were not approved for a "Private Supplemental Modification Program."

On September 22, 2016, at a hearing on CMI's lift stay motion, this Court directed CMI to file an affidavit in response to the Debtors' Supplemental Opposition. Garret D. Ashlock ("Ashlock"), a Bankruptcy Specialist at CMI filed an affidavit, which is attached to the Creditors' Memorandum in Support of Motion for Summary Judgment, in which he stated that he had reviewed relevant documents and that he had been the "primary Citi contact relative to the Debtors' Mortgage Account and have worked closely with Citi's counsel in reviewing and monitoring the Debtors' bankruptcy case." With respect to the averments in the Debtors' Supplemental Opposition reproduced above, Ashlock stated that he had reviewed CMI's records for any communications regarding the alleged advice to cease making periodic payments and the refusal to accept any payments in an amount less than the full accrued postpetition amount. He represented that he found nothing in CMI's servicing records that reflect any such communications and that he did not recall speaking with either of the Debtors about the representations in the Supplemental Opposition. He stated: "[I]t is within Citi's procedures to accept any and all post-petition payments *made during an active bankruptcy case*, including partial payments." (emphasis supplied).

In a supplemental affidavit, attached as an exhibit to the Creditors' Memorandum in Support of their Motion for Summary Judgment, Ashlock represented that the check dated October 18, 2015 was returned to the Debtors owing to the fact that the case had been dismissed on October 20, 2015 and was not reinstated until 3:19 pm on November 2, 2015. Because the case had been dismissed, CMI's coding was changed to indicate a non-bankruptcy default status and was not returned to an active status until November

3, 2015 within 24 hours of the allowance of the Debtors' motion to vacate. According to

CMI, its practice is that when a borrower is in default and in an active bankruptcy case,

partial payments are accepted, which it reflects through coding in its notes for each

borrower. When a borrower is in default and the bankruptcy case is not active, a

circumstance which also is reflected in CMI's coding, partial payments that are

insufficient to cure the delinquency are not necessarily accepted. Consistent with its

practice, after the Court dismissed the Plaintiffs' bankruptcy case on October 20, 2015,

CMI changed its internal coding to reflect that the Plaintiffs were no longer in

bankruptcy. After the bankruptcy case was reinstated, CMI reinstated the coding in the

Plaintiffs' account as being in active bankruptcy default on November 3, 2015. Thus,

Ashlock's recitation of the facts was consistent with the record of proceedings in the case.

As noted above, the Court dismissed the Debtors' case on October 20, 2015 because they

failed to controvert the Chapter 13 Trustee's Affidavit of Non-Compliance with the

Agreed Order and reinstated it on November 2, 2015 at 3:19 pm.

On October 6, 2016, the Court conducted a continued hearing on the lift stay

motion originally filed on April 23, 2015. Debtors' counsel complained about the

returned check and indicated that the Debtors had a confirmed plan at the time, although

he recognized that it "was technically dismissed" until it was reinstated on November 2,

2015, that the Debtors' postpetition arrears were approximately $181,000, and that the

Debtors would be unable to cure the postpetition arrears in full. Debtors' counsel also

argued that "by refusing to accept periodic payments as they have done, they have

waived the defaults with respect to those particular payments" and that the Debtors had

claims against the Creditors for unfair and deceptive acts.   In response to those representations, the Court directed the Debtors to file an adversary proceeding within 14 days as consideration of those issues was outside the scope of a lift stay hearing, citing Grella v. Salem Five Cent Savs. Bank, 42 F.3d 26 (1st Cir. 1994).  The Court continued the hearing on the lift stay motion until November 10, 2016.

The Court subsequently extended the deadline to file an adversary complaint and, in addition, the Chapter Trustee, on November 28, 2016, filed another motion to dismiss the Debtors' case for failure to make plan payments.  She subsequently withdrew that motion, and, on January 31, 2017, the Debtors filed the above-captioned adversary proceeding.  In addition, on February 14, 2017, CMI withdrew its lift stay motion and one week later, on February 21, 2017, the Chapter 13 Trustee filed yet another motion to dismiss for failure to make plan payments.

On May 19, 2017, the Chapter 13 Trustee filed a Notice of Final Cure Payment pursuant to Fed. R. Bankr. P. 3002.1(f).  She indicated that she had paid the prepetition arrears owed the Creditors in the amount of $62,854.90 and also indicated that the Debtors were to make ongoing monthly mortgage payments directly to CMI.   The Creditors, on June 5, 2017, filed a response to the Notice of Final Cure, indicating that the prepetition default had been cured but that the total amount due for postpetition arrears was $195,633.50, an amount three times greater than the prepetition arrears on January 31, 2012.  On June 20, 2017, the Debtors filed a Motion for Determination of Amount of Post-Petition Default Payments under Fed. R. Bankr. P. 3002.1(h) Regarding Secured

11

Claim of CitiMortgage, Inc. to which CMI objected.[5]   On July 13, 2017, this Court

consolidated the contested matter with the adversary proceeding.

In addition to the foregoing facts recited in the Debtors' Verified Complaint and

readily gleaned from this Court's docket, CMI set forth additional facts in its summary

judgment motion.   Specifically, it represented that prior to filing their bankruptcy

petition, Plaintiffs received monthly statements in the mail from CMI.   After they filed

their bankruptcy petition, CMI continued to mail the Plaintiffs monthly statements.

---

[5] The Debtors asserted, in pertinent part, the following:

> 8. Based upon the allegations contained in the Verified Adversary Complaint in Adv. Pro. 17-01008, the Debtors assert that the figures supplied by the Creditor in its Response under Fed. R. Bankr. Pro. 3002.1(g) are erroneous as they are based upon the wrongful actions of the Creditor in refusing to accept the tender of payments made by the Debtors in violation of the Order of Confirmation of their Chapter 13 Plan.

> 9. Pursuant to Fed. R. Bankr. Pro. 3002.1(i), the Creditor's failure to properly provide the correct information set forth under Fed. R. Bankr. Pro. 3002.1(g) "precludes the holder of the claim from presenting the omitted information, in any form, in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless" or "award other appropriate relief, including reasonable attorney's fees caused by the failure."

> 10. The Debtors assert that they have already presented sufficient evidence of the Creditor's refusal to accept tender of payment made by the Debtors to the Creditor such that the court on October 6, 2016, in order to place the Debtor's claims against the Creditor in the proper procedural posture so as to provide the required relief, has ordered the Debtor to commence an adversary proceeding against the Creditor.

CMI responded, stating: "the Debtors' motion effectively asks this Court to absolve them of any obligation to perform their confirmed plan . . . the Debtors are asking this Court to order that the entire balance of the loan on their home be eliminated, effectively giving the Debtors a free home."

Although Mr. Chase testified at his deposition that he tendered an unspecified number of postpetition mortgage payments, the Plaintiffs did not make all required postpetition mortgage payments, and they acknowledged that they were not current on their postpetition loan payments. As noted above, as of June 5, 2017, the postpetition arrears on the Loan accrued by the Plaintiffs was $195,633.59. When CMI returned the Debtors' check in the sum of $2,950.00 on November 2, 2015, the amount of the Debtors' postpetition arrears was $145,259.12.

The Debtors did not send the Lenders a demand letter as required by Mass. Gen. Laws ch. 93A. The only damages that the Debtors identified were emotional distress damages. Mr. Chase testified at a deposition that he gained weight during the Chapter 13 case; Mrs. Chase testified at her deposition that she and her husband were under a lot of stress. Neither sought psychiatric counseling; neither required any medical attention beyond routine check-ups as a result of their alleged emotional distress.

## III. SUMMARY JUDGMENT STANDARD

According to the United States Bankruptcy Appellate Panel of the First Circuit in

Raso v. Fahey (In re Fahey), 482 B.R. 678 (1st Cir. BAP 2012),

> "In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056." Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 762 (1st Cir. 1994); *see also* Soto–Rios v. Banco Popular de Puerto Rico, 662 F.3d 112, 115 (1st Cir. 2011). "By its express terms, the rule incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure." In re Varrasso, 37 F.3d at 762 (citations omitted); *see also* Soto–Rios v. Banco Popular de Puerto Rico, 662 F.3d at 115; Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56.6 "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." In re Varrasso, 37 F.3d at 763 (citing Fed. R. Civ. P. 56(c)). "As to issues

on which the nonmovant has the burden of proof, the movant need do no more than aver an absence of evidence to support the nonmoving party's case." Id. at 763, n.1 (citation and internal quotations omitted). "The burden of production then shifts to the nonmovant, who, to avoid summary judgment, must establish the existence of at least one question of fact that is both genuine and material." Id. (citations and internal quotations omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In re Fahey, 482 B.R. at 686–87. *See also* In re Spenlinhauer, 573 B.R. 343, 355–56 (Bankr. D. Mass. 2017).

Massachusetts Local Bankruptcy Rule 7056-1 incorporates Local Rule 56.1 of the United States District Court for the District of Massachusetts. It provides the following:

Motions for summary judgment shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation. Failure to include such a statement constitutes grounds for denial of the motion. Opposition to motions for summary judgment must be filed, unless the court orders otherwise, within 21 days after the motion is served. *A party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation*. Copies of all referenced documentation shall be filed as exhibits to the motion or opposition. Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties. Unless the court orders otherwise, the moving party may file a reply within 14 days after the response is served.

D. Mass. LR 56.1. The Creditors attached to their Memorandum a "MLBR 7056-1 Statement of Facts" and included in the Memorandum a detailed "Factual Background" which satisfy the requirement for the filing of a concise statement of material facts of

14

record, which this Court has supplemented to facilitate understanding of context with

reference to its docket.  The Debtors did not file a concise statement of material facts as to

which they contend there exists a genuine issue to be tried.  Rather, they stated the

following:

> In the present case, the context and timing of events surrounding the commencement of this adversary proceeding is critically important in determining the disposition of the instant motion. There is no dispute that the Debtors' Chapter 13 Plan was confirmed by the Court on November 21, 2014.[6] The Plaintiffs-in-Counterclaim have averred under oath in their Verified Adversary Complaint that they were led to believe that by representatives of the Defendant-in-Counterclaim CitiMortgage, Inc. upon submitting a Loan Modification application in December of 2014, that it would not accept any payments for less than the entire outstanding arrears owed by the Debtors while the Loan Modification Application was in process.

> The Defendants-in-Counterclaim focus instead on the Debtor's payment dated October 18, 2015 in the amount of $2,950 as the basis for their Motion for Summary Judgment. The Defendants-in-Counterclaim allege that they did not violate the Court's Order of Confirmation regarding the Debtor's Chapter 13 Plan because the Court had dismissed the Chapter 13 case on October 20, 2015 despite the fact that the case was reinstated at 3:19 pm on November 2, 2015, the return of the Plaintiffs-in-Counterclaims' mortgage payment *on that same day*.

> What the Defendants-in-Counterclaim fail to address is the fact that the Debtor's Motion to Vacate Dismissal was filed on October 22, 2015 and therefore were on notice that the Motion to Vacate Dismissal was pending at the time the Debtor's payment must have been received by the Defendants-in-Counterclaim. Indeed, considering the fact that Defendants-in-Counterclaims' counsel, Robert Tenney received notice of the filing of the Motion to Vacate Dismissal (as he was listed as a filing on the Court's CM/ECF system) and knew that no party had objected to the Motion to Vacate meant that Defendants-in-Counterclaim knew or should have known that the Motion would be allowed in due course. Moreover, the Defendants-in-Counterclaim assume that the effectiveness of the Order reinstating the case only applies the *minute* that it is entered. They cite no

---

[6] This date is incorrect.

> rule or statute for this proposition. It is just as reasonable to assume that the
> "effective **date**" of the order vacating the dismissal of the Debtor's Chapter
> 13 case was the **date** it was granted, regardless of what **time of day** the
> vacatur was recorded on the docket.

(footnotes omitted, emphasis in original).[7]   From the Debtors' argument, the Court

concludes that the pertinent dispute concerns the Debtors' stated belief that CMI would

not accept any payments for less than the entire outstanding arrears owed by the Debtors

while their loan modification application filed in December of 2014 was in process.   The

Court finds that the Debtors' assertion fails to create a genuine issue of material fact for

several reasons.   In the first place, CMI denied their request for a loan modification in a

letter to their counsel dated May 6, 2015.   In addition, the Debtors did not identify any

individual who made such a representation, and they did not produce any documents in

which such a representation was made.   In short, they did not rebut Ashlock's affidavit.

Their unsubstantiated belief does not create a genuine issue of material fact.

The Court further notes that the Debtors' plan was not confirmed on November

21, 2014.  The Court entered a confirmation order on January 27, 2014 and an amended

confirmation order on June 29, 2015.  Moreover, a case remains dismissed until such time

as the order of dismissal is vacated.  Notice of the filing of a motion to vacate does not

reinstate a bankruptcy case or the automatic stay.  Given the Debtors' history of defaults

with respect to their Chapter 13 plans, any notion that the Court would vacate its

dismissal order as a matter of course is unwarranted; knowledge that the Debtors filed a

motion to vacate is of no consequence.

---

[7] Notably, the Debtors cited no authority either.

## IV. DISCUSSION

Count I of the Debtors' Complaint is predicated upon violation of the confirmation order. The Creditors maintain, correctly, that they are entitled to summary judgment on Count I because they did not violate the confirmation order. CMI's refusal to accept a check while the Debtors' Chapter 13 case was dismissed did not violate the confirmation order because the confirmation order was not in effect. *See generally* 11 U.S.C. § 349. The Creditors also correctly argue that parties are no longer bound by a confirmed plan once a case is dismissed as a Chapter 13 plan is no longer enforceable after dismissal. *See* Williams v. Marshall, 526 B.R. 695, 698 (N.D. Ill. 2014) ("Although courts may quibble over whether dismissal vacates the order confirming the plan, *compare* [In re]Parrish, 275 B.R. at 499 [275 B.R. 424 (Bankr. D. D.C. 2002)], *with* [Nash v. Kester (In re] Nash, 765 F.2d at 1413 [765 F.2d 1410 (9th Cir. 1985)], it is irrefutable that a Chapter 13 plan is no longer enforceable after a case is dismissed. *See* Hon. W. Homer Drake, Jr., Hon. Paul W. Bonapfel & Adam M. Goodman, CHAPTER 13 PRACTICE & PROCEDURE, § 13:11 (last updated Nov. 2013) ("Upon dismissal of a Chapter 13 case, a Chapter 13 plan is no longer in force[.]"); *cf.* Wells Fargo Bank, N.A. v. Oparaji (In re Oparaji), 698 F.3d 231, 238 (5th Cir.2012) ("Wells Fargo convincingly argues that, since the Bankruptcy Court dismissed Debtor's bankruptcy plan without granting a discharge, the court's acceptance of that plan was negated and the parties were no longer bound by its terms.")).

Even assuming that the Court's order of November 2, 2015 preceded the deposit in the mail of CMI's November 2, 2015 letter to the Debtors returning their check in the amount of $2,950.00, the Court concludes that CMI cannot be held accountable as it is

unreasonable to conclude that CMI instantaneously would be able to internally process a notification that the Debtors' case was reinstated.  More significantly, the Debtors were in no way damaged by the return of the check in the amount of $2,950.00.

Section 1327 of the Bankruptcy Code provides:  "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). The overwhelming evidence adduced from the record clearly establishes that the Debtors did not make regular monthly mortgage payments to CMI as required by the terms of the confirmed Chapter 13 Plan and, therefore, they were in default with respect to their confirmed plan.  Their claim for emotional distress damages and their attempt to be relieved of responsibility for monthly mortgage payments owing to CMI's decision to return one check in the sum of $2,950.00 at a time when they were in postpetition arrears in the amount of $145,259.12 and their case was dismissed signals to this Court an absurd view of the confirmation order, as well as a transparent attempt to take advantage of circumstances that were entirely of their own making.

While this Court has sympathy for the Debtors' financial difficulties and their attempts to save the property, their decision to pay prepetition arrears and other debts through their Chapter 13 plans, while failing to make regular monthly mortgage payments and thus amassing more debt at the end of their case than at the beginning, cannot be blamed on the Creditors who returned a single check to the Debtors while their case was dismissed, particularly where the Debtors failed to produce evidence in rebuttal

18

that CMI had actual knowledge that the dismissal order had been vacated at the time it returned their check.  In view of the magnitude of the Debtors' defaults with respect to their postpetition payment obligations to CMI, Count I is nothing more than a massive overreach where the Debtors produced no evidence to rebut CMI's contention that there was no willful disregard of the confirmation order or compensable damages.

According to the court in <u>Padilla v. GMAC Mortg. Corp. (In re Padilla)</u>, 389 B.R. 409 (Bankr. E.D. Pa. 2008),

> A confirmed plan constitutes a new contract between the debtor and creditors. <u>In re Padilla</u>, 379 B.R. 643, 663 (Bankr. S.D. Tex. 2007) (citing authorities); *see also* <u>In re Sims</u>, 278 B.R. 457, 473 (Bankr. E.D. Tenn. 2002) (citing Matter of Kelvin Pub., Inc., 1995 WL 734481, *3 (6th Cir.1995) (nonprecedential opinion) ("There can be no sanction for contempt without [a] sufficiently willful violation of a clear judicial command.")). The confirmation order judicially validates the plan as the new "contract" between the debtor and the creditors whose rights are addressed in the plan, with the plan either supplementing or superseding the prepetition legal relationship between the debtor and the creditors. *See* <u>In re McDonald</u>, 336 B.R. 380, 383 (Bankr. N.D. Ill. 2006); *accord*, <u>In re Turek</u>, 346 B.R. 350, 354–55 (Bankr. M.D. Pa. 2006); <u>In re Miller</u>, 325 B.R. 539, 543 (Bankr. W.D. Pa. 2005); <u>In re Bryant</u>, 323 B.R. 635, 639 (Bankr. E.D. Pa. 2005).
>
> A breach of contract that would not give rise to a contempt remedy outside the bankruptcy context is not transformed into a violation of a coercive court order and therefore, subject to contempt just because the new "global contract" between a chapter 13 debtor and his or her creditors has been "confirmed" by order of the bankruptcy court. A good analogy is to compare the court's approval of a chapter 13 plan to a court's approval of a settlement agreement. A subsequent breach of the terms of a settlement agreement that has been approved by a court to resolve outstanding litigation does not generally give rise to contempt remedies. <u>Stewart v. O'Neill</u>, 225 F.Supp.2d 6, 10 (D. D.C. 2002); <u>National Union of Hosp. & Health Care Employees. v. Retail, Wholesale, Dept. Store Union</u>, 1984 U.S. Dist. LEXIS 16174, *2 (S.D.N.Y. June 4, 1984).

<u>In re Padilla</u>, 389 B.R. at 420–21.  *See also* <u>In re Markham</u>, 504 B.R. 1, 6 (Bankr. D. Mass. 2013) ("A confirmed chapter 13 plan has been likened to a contract between a debtor and his creditors. <u>Lacy v. Stinky Love, Inc. (In re Lacy)</u>, 304 B.R. 439, 444 (D. Colo. 2004). An order confirming a chapter 13 plan is res judicata as to all issues decided or which could have been decided at the hearing on confirmation. <u>In re Dorsey</u>, 505 F.3d 395, 399 (5th Cir. 2007); <u>Factors Funding Co. v. Fili (In re Fili)</u>, 257 B.R. 370, 372 (B.A.P. 1st Cir. 2001)."). In view of the summary judgment record, the Court concludes that the Debtors failed to establish any basis for an award of damages for violation of the confirmation order when CMI returned the Debtors' $2,950.00 payment to them on November 2, 2015, either in the form of contempt, breach of contract, or any other cognizable form of relief.  The confirmation order was suspended because of the dismissal of the Debtors' case.  To the extent it was revived on or after 3:19 pm on November 2, 2015, the Debtors failed to establish that CMI was aware that the case was reinstated at the time it returned their check and, more importantly, failed to establish any compensable damages arising from a technical breach lasting less than 24 hours.

With respect to Count II, the Creditors argue, correctly, that they are entitled to summary judgment because the Debtors failed to provide them with a demand letter as required by Mass. Gen. Laws ch. 93A, § 9(3), particularly in view of the four-month period between October 6, 2016 when the Court discussed the filing of an adversary proceeding, and January 31, 2017 when the Debtors filed their Complaint.[8]  Even if this Court were to

---

[8] The "statutory notice requirement [of a Chapter 93A, § 9 demand letter] is not merely a procedural nicety, but, rather, 'a prerequisite to suit.'" <u>Rodi v. S. New England Sch. of</u>

view the Debtors' claim under Chapter 93A as a counterclaim to a lift stay motion, however, and accept the Debtors' reliance on the provisions of Mass. Gen. Laws ch. 93A, § 9(3), which excuses the demand requirement if the claim is asserted by way of counterclaim or cross-claim,[9] the Court concludes that the Debtors' allegations that the Creditors' refusal to accept a mortgage payment while their Chapter 13 case was dismissed is insufficient to sustain a claim for relief, particularly where the Creditors have now withdrawn their lift stay motion and did not aggressively assert entitlement to relief from the automatic stay, despite the Debtors' defaults under the terms of their confirmed plan.   The Debtors produced no evidence whatsoever of conduct on the part of the Creditors that would give rise to damages for unfair and deceptive trade practices.   In addition, as noted above, they also failed to submit any evidence whatsoever of

---

Law, 389 F.3d 5, 19 (1st Cir. *See also* Lacey v. BAC Home Loans Serv., LP (In re Lacey), 480 B.R. 13, 46-47 (Bankr. D. Mass. 2012).

[9] Section 9(3) provides:

> The demand requirements of this paragraph shall not apply if the claim is asserted by way of counterclaim or cross-claim, or if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth, but such respondent may otherwise employ the provisions of this section by making a written offer of relief and paying the rejected tender into court as soon as practicable after receiving notice of an action commenced under this section. Notwithstanding any other provision to the contrary, if the court finds any method, act or practice unlawful with regard to any security or any contract of sale of a commodity for future delivery as defined in section two, and if the court finds for the petitioner, recovery shall be in the amount of actual damages.

Mass. Gen. Laws Ann. ch. 93A, § 9.

compensable damages to rebut their deposition testimony produced by the Creditors in

they admitted that they sought no medical attention for their emotional distress.

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Creditors'

Motion for Summary Judgment.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  December 13, 2017